ISAAC LOWE v. WILLIAM H. WILLIAMSON.

What constitutes testamentary capacity, or the "sound and disposing mind and memory" essential in a testator.

The mere opinions of witnesses, (other than the testamentary,) unsupported by facts, are entitled to no weight.

The influence acquired over a testator by kind offices, unconnected with any fraud or contrivance, can never, alone, be a good ground of setting aside a will: such influence is lawful and proper.

The influence thus acquired, though exerted over a testator above eighty years of age, whose bodily faculties are impaired, and who, without good reason, entertains feelings of hostility to his family, cannot invalidate the will.

ON the 15th of July, 1833, William H. Williamson exhibited to the surrogate of the county of Somerset, for probate, a paper writing, purporting to be the last will and testament of John D. Lowe, late of the township of Hillsborough, in said county. Isaac Lowe, a brother of the said John D. Lowe, having filed a caveat against the probate of the said instrument, the cause was brought to hearing before the orphan's court of said

[Lowe v. Williamson.]

county of Somerset. That court, after hearing testimony and counsel upon both sides, by their decree, bearing date on the 26th of March, 1835, admitted the said writing to probate as the will of the said John D. Lowe, and directed that the costs of suit should be paid equally by the parties.

From this decree the caveator appealed, and by his petition complains that "the said decree is erroneous, contrary to law, and against the evidence." The respondent, William H. Williamson, having filed his answer to the petition of appeal, the cause came on for hearing before the ordinary, at January term, 1838.

The material facts and circumstances adduced in evidence, and relied upon by the respective parties, as far as necessary to an understanding of the case, are stated in the opinion of the ordinary.

*P. I. Clark* and *Frelinghuysen*, for appellant, insisted that the testator was not competent to make a will,

1. Because he was destitute of testamentary capacity.

2. By reason of monomania—a delusion of mind as to his family, under which he labored.

3. From improper influence exercised over him by the devisee.

They cited 3 *Stark.* 1702, *n.*; 2 *South.* 455; 3 *Stark.* 1707, *n.* 4; *Swinb.* 78; 6 *Coke,* 23, *a.*; 1 *Peters C. C. R.* 164; 1 *Chitty's Med. Jur.* 352; 13 *Vesey,* 89; 3 *Stark.* 1703, 8; 5 *Johns.* 158; 2 *Yeates,* 48; 2 *South.* 660; *Cooper's Med. Jur.* 340, 8; 8 *Mass.* 371; 9 *Vesey,* 185; 11 *Ibid,* 11; 7 *Serg. and R.* 92; 8 *Ibid,* 573.

*Hartwell* and *Wall,* for respondent, in reply, cited, opinion of chief justice Ewing in the case of *Maxwell's will;* opinion of Vroom, ordinary, in the case of *Harris's will; Whitenack* v. *Stryker,* ante, p. 8; 1 *Cond. Eccles. Rep.* 336; 3 *Ibid,* 254; *Shelford on Lunatics,* 329, 318; *Beck's Med. Jur.* 380; 4 *Wash. C. C. Rep.* 262; 2 *South.* 674.

[Lowe v. Williamson.]

THE ORDINARY.   The will of John D. Lowe, bears date on the 6th day of August, A. D. 1831, and he died in the month of July, 1833.   The instrument on its face is plain and simple, requiring no extraordinary effort of mind to prepare or understand.   After providing for the payment of his debts, authority is given to his executor to sell his personal estate first, and if that be not sufficient, then his real estate to discharge them.   He then gives all his estate, real and personal, to William H. Williamson, whom he makes his sole executor, requiring that he shall maintain and support his (the testator's) wife, if she survive him, in a manner suitable to her age and infirmities, during her natural life; and he charges such maintenance and support upon his real estate.   This is the whole will.   The devisee and executor, William H. Williamson, is a stranger to the family of the testator, being no way allied to him by blood or marriage.   It cannot be matter of wonder that the immediate relations, those to whom the estate, according to the course of nature, would have gone, should feel, and feel sensibly, this disposition of the property. It furnishes with me an additional motive to look into the case with care.

There are a variety of circumstances appearing by the evidence, which meet this part of the subject, and account, in some measure, for the will.   The testator had no children.   His wife, like himself, was aged and infirm.   He had, with or without sufficient cause, long estranged himself from his family. Through a course of years, so far from manifesting any thing of that affection and regard which would naturally be looked for from a man toward his nearest relatives, he was full of expressions of hostility towards them all.   He seemed to entertain the opinion, that they looked down upon him.   There was little or no intercourse between him and his family.   He frequently triumphed in the idea that his brothers would be mad when they found they got none of his property.   He had made other wills. In the last, made many years before his death, he gave none of his property to his family, but to a young man a relative of his wife.   All these circumstances are very strong, and furnish the

motives which actuated the testator in the disposition of his property. I am very far from seeing any thing in the evidence to justify this hostility towards his relatives, but that he entertained these feelings for a long course of years is abundantly proved. His habits of gross intemperance would certainly have excused even a relative from any close association. He made by his will provision for his wife; and it is worthy of remark, that although the devisee (Mr. Williamson) was a stranger to the blood of the testator, yet he evidently had a strong attachment for him. They had lived together for several years, and the testator had received great kindness and attention from him in his declining years, and not only himself but his wife also. The testator spoke frequently of his kindness; and it must be conceded, that although a man of strong prejudices, he was not insensible to offices of kindness and attention. When the testator offered to give his estate to others, which he did on several occasions, it was generally, if not always, coupled with the condition, that they would come and live with him, and take care of him and his wife. These are all matters proper and necessary to be borne in mind, when considering the unnatural character of the provisions of the will.

Three grounds are taken against the will:—1. Incapacity. 2. That the testator had a delusion of mind as to his family. 3. That improper influence was exercised in its procurement.

What constitutes " a testamentary capacity," or in other words " a sound and disposing mind and memory," has been repeatedly settled in this court. The correct and settled construction is contained in the case of *Den* v. *Vancleve*, in 4 *Washington's Circuit Court Reports*, 267–8. The language used by the judges in that case, I find repeated in almost every case since, and must be taken now as the received definition and meaning of the above terms. The language is, " He (the testator) must, in the language of the law, be possessed of a sound and disposing mind and memory. He must have memory. A man in whom this faculty is totally extinguished, cannot be said to possess understanding to any degree whatever, or for any purpose.

But his memory may be very imperfect; it may be greatly impaired by age or disease; he may not be able, at all times, to recollect the names, the persons, or the families, of those with whom he had been intimately acquainted; may at times ask idle questions, and repeat those which had before been asked and answered; and yet his understanding may be sufficiently sound for many of the ordinary transactions of life.   He may not have sufficient strength of memory and vigor of intellect to make and to digest all the parts of a contract, and yet be competent to direct the distribution of his property by will.   This is a subject which he may possibly have often thought of; and there is probably no person who has not arranged such a disposition in his mind, before he committed it to writing.   The question is not so much what was the degree of memory possessed by the testator, as this—Had he a disposing memory?   Was he capable of recollecting the property he was about to bequeath, the manner of distributing it, and the objects of his bounty?   To sum up the whole in the most simple and intelligible form, were his mind and memory sufficiently sound to enable him to know and to understand the business in which he was engaged at the time when he executed his will?"

In the opinion of chief justice Ewing and justice Drake, on the will of *John Maxwell*, sitting for the ordinary (Vroom) in this court, after quoting the above language of judge Washington, they say, " we shall, on the present occasion, adopt in substance the doctrine laid down by judge Washington, as the proper exposition of the terms, sound and disposing mind and memory, and the correct standard of testamentary competency and capacity.   We find it perspicuous, we believe it sound, and we learn it was received and approved by the ordinary in the recent case of the appeal on the will of *Tacey Wallace*."   Chancellor Vroom, in the case of the will of *Adam Snyder*, says, in reference to this same opinion of judge Washington, " In the case of *Tacey Wallace's* will, decided in this court in January, 1831, and in the case of *John Maxwell's* will, decided in this court in October, 1831, by chief justice Ewing and justice Drake,

sitting for the ordinary, the law as laid down in the authorities above cited, is considered as the law of the land, and the court has so held it in subsequent cases."

The law, therefore, on this subject, is well settled in this court.

[After a minute examination of the very voluminous evidence touching the testator's capacity, which is here omitted, the ordinary proceeds—]

If the mere opinions of witnesses were to govern, it would be impossible to decide this cause. They are nearly divided on that point. But it is singular to remark, that many witnesses in this cause, while they repeat again and again their opinion against the testator's capacity, state no single fact upon which such an opinion can rest: nay, in many cases, the conversations which they relate, and the testator's whole conduct, would seem to have been perfectly rational. The testator was eighty years of age, very deaf, and his eye sight defective. It was no strange thing, that under his circumstances, many should have been impressed with a firm belief of his incompetency to transact any business. This was no doubt strengthened by the fact, that he was much in the habit of depending on his wife. She appeared to control every thing.

From a careful examination of the facts related, not placing my dependence on the mere opinions of the witnesses, I can come to no other conclusion, than that the testator had mind and memory sufficient to execute the will in question. All the subscribing witnesses, and the writer of the will, with many other witnesses, agree that he had; and the general course of his conversation, when sober, shows no such prostration of his mental powers as will justify me in setting aside this will. It will be remarked, that there is no pretence of derangement; but the ground assumed is, that his long habits had gradually so enfeebled his mind, that he was not competent to discharge so solemn a duty as the making of this will.

Some views were presented by the counsel of the caveators of an imposing character, but a strict examination of the evidence

will not enable me to sustain them. Among these, there was one which at the time made a strong impression on my mind, viz. that the condition of the testator's mind was such, so enfeebled by age, by drunkenness, and general infirmity, that he was an easy prey to any man who might flatter his prejudices. I cannot, however, find the evidence strong enough to believe that he was thus deluded. The manner of executing the will, the time taken, the apparent reluctance on the part of Williamson to go after Mr. Manners, all are at war with such an attempt. Could this testator, by any flattery, have been induced to make a will in favor of his relatives? If not, then he had mind and will to act on this subject. His course was uniform. He always said he would not give his property to his relatives. As to the argument derived from the influence acquired over the testator by kind offices, that alone can never be a good ground for setting aside a will, unconnected with any fraud or contrivance. So far as that went in the present case, I consider it creditable to Williamson and his family. They did take good care of these old people, and if that circumstance has had, as it no doubt had, an influence on the testator's mind in making this will, it was lawful and proper. I cannot see any such improper influence exerted over the testator as to affect this case.

It was further urged, that the testator was under a species of derangement or delusion as to his relatives: that he took up a prejudice without cause. I have before said, that I find no good reason for this hostility, but it is plain that the testator had such feelings towards them. There was no intimacy with them. They visited him very little. He had an idea that they looked down upon him, and was no doubt jealous of their superior standing. There was, then, no delusion, but a reality in the fact, that there existed no cordiality between him and his relatives. It was of long standing; not sudden and accidental, but abiding.

Upon the whole case, I am constrained to say, that I see no good ground for refusing the probate of this will. I therefore affirm the decision of the orphan's court of the county of Som-

[*Lowe v. Williamson.*]

erset in all respects, and direct each party to pay his own costs on this appeal.

The following decree was thereupon made:—

"This cause having been heard and debated before this court, in the presence of the counsel of the respective parties, at the term of January last, and the court having taken time to consider thereon; whereupon, and upon inspecting and considering the proofs, depositions, and exhibits, and the paper writing purporting to be the last will and testament of the said John D. Lowe, deceased; the court is of opinion that the said testator, John D. Lowe, at the time of making and executing the said last will and testament, was of sound and disposing mind and memory, and possessed sufficient testamentary capacity to make and execute the said last will and testament, and that probate thereof ought to be granted in due form of law. It is thereupon, at a prerogative court held at Trenton, on this ninth day of April, A. D. 1838, ordered, adjudged and decreed, that the decree of the orphan's court of the county of Somerset, be in all things affirmed, and that the said will be admitted to probate, and further, that each party pay his own costs on this appeal."